United States District Court
Southern District of Texas
**ENTERED**
August 16, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEMETRIUS WILLIAMS, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | Civil Action No. H-15-1551 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his conviction and thirty-year sentence for possession with intent to deliver a controlled substance, phencyclidine. Respondent filed a motion for summary judgment (Docket Entry No. 13), to which petitioner filed a response (Docket Entry No. 17).

Having considered the motion, the response, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this lawsuit for the reasons that follow.

### I.  PROCEDURAL BACKGROUND AND CLAIMS

The jury found petitioner guilty of possession with intent to deliver a controlled substance, phencyclidine ("PCP"), and assessed punishment at thirty years incarceration. The conviction was affirmed on appeal, *Williams v. State*, No. 01-12-010084-CR, 2014 WL 60723 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (not designated for publication).

Petitioner's untimely filed petition for discretionary review was dismissed. His application for state habeas relief, filed with the trial court on October 10, 2014, was denied by the Texas Court of Criminal Appeals on March 4, 2015.

Petitioner argues in his federal habeas petition that trial counsel was ineffective in

1.    failing to file a motion to suppress the controlled substance seized as the result of an illegal arrest;

2.    failing to present evidence that his co-defendant made an audio-taped confession to an investigator and an assistant district attorney stating that petitioner was innocent;

3.    failing to have the PCP bottle tested for his fingerprints;

4.    failing to have an investigator testify that petitioner did not possess the PCP bottle; and

5.    failing to challenge the officer's statements from the police report as being prepared by an officer without personal knowledge of the incident.

Petitioner further claims that he was denied the effective assistance of trial counsel because

6.    the trial court refused to hear and rule on his motion to dismiss counsel prior to trial.

Respondent argues that these grounds have no merit and should be dismissed.

## II.  FACTUAL BACKGROUND

The intermediate state court of appeals set forth the following statement of facts in its opinion affirming petitioner's conviction.

2

Officers James Crawford and Clifton Holloway of the Houston Police Department were patrolling an area of the city known for narcotics activity in their marked police cruiser. As they drove with their windows open, they noticed a Jeep Cherokee in the opposite lane, parked facing the wrong direction. The officers detected the strong chemical odor of PCP as they passed.

The windows of the Jeep were down and two women were seated in the backseat. [Appellant] was standing by the rear passenger side door and another man, named Castor, was standing by the driver's side door. [Appellant] was leaning into the Jeep and speaking with one of the women.

The officers turned their car around and parked behind the Jeep. As they approached, [appellant] handed a small bottle to the woman on his side of the Jeep, who deposited it in the rear compartment of the vehicle. Castor dropped a cigarette to the ground that, upon later examination, proved to be a "wet" cigarette that had been dipped in PCP. He also placed in the driver's-side door a bottle containing 0.2 grams of crack cocaine.

The officers detained both men. While they were busy with this task, one of the ladies jumped to the front seat and tried to drive away, but she was stopped by the officers. Upon further inspection of the car, the officers located the bottle that [appellant] had passed to the woman. Testing showed that it contained 10.1 grams of PCP, including diluents and adulterants.

*Williams*, 2014 WL 60723 at *1.

## III. THE APPLICABLE LEGAL STANDARDS

A.    Habeas Review

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by

3

the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state

4

criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

B.    Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner argues that trial counsel was ineffective in the following five instances.

7

A.     Failure to file a motion to suppress

Petitioner argues that trial counsel should have filed a motion to suppress the controlled substance seized as the result of an illegal arrest.

To prevail on this claim, petitioner must prove that his Fourth Amendment claim was meritorious and that there is a reasonable probability that the verdict would have been different absent the excludible evidence in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Thus, in order to show ineffective assistance in these circumstances, petitioner must first show that his Fourth Amendment claim would have been granted. *See United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987) ("The inquiry turns on whether a hypothetical motion to suppress would have been successful."). If the record does not support valid grounds upon which a motion to suppress could have been successfully asserted, counsel will not be held ineffective for failing to file the motion.

Petitioner does not demonstrate valid grounds in the record supporting a motion to suppress. The trial testimony showed that the vehicle petitioner was leaning into was facing the wrong way on the street and that he was at the passenger rear door when the officers saw him. 2 RR 15. One of the officers testified that he could smell the odor of PCP when they passed the vehicle. 2 RR 23. As they approached, the other male in the car, Castor, dropped a "wet" cigarette to the ground, and the officer saw petitioner hand a bottle to one of the women sitting in the backseat. The bottle was later recovered and found to contain PCP. 2

RR 62, 77.   Petitioner, Castor, and the woman were arrested, while a second woman unsuccessfully attempted to flee. 2 RR 63. Under these facts, the officers had sufficient, articulable suspicion to believe that the individuals, including petitioner, had committed or were about to commit a crime.   *Terry v. Ohio*, 392 U.S. 1, 19 (1968).   The officers immediately substantiated and obtained probable cause when they approached the scene and found contraband in the possession of more than one person. *Id.*

Petitioner's argument that the officers did not check for outstanding arrest warrants disregards the officer's observation that petitioner had handed the bottle to the female passenger after noticing the approaching police, which provided sufficient justification for the stop under state law.  *See* TEX. CODE. CRIM. PROC. art. 14.01(b) (authorizing a peace officer to arrest for any offense committed in his presence or within his view).  Further, trial counsel correctly advised petitioner that he did not have standing to raise a challenge to the search of the vehicle. *United States v. Roberson*, 6 F.3d 1088, 1091 (5th Cir. 1993). Petitioner has not shown that trial counsel unreasonably determined not to seek suppression of the arrest, nor does he show that such a motion would have been granted. K*immelman*, 477 U.S. at 375.  Because petitioner has not demonstrated a basis upon which a motion to suppress would have succeeded, he has not established that the state court unreasonably rejected his claim of ineffective assistance of counsel. *Richter*, 562 U.S. at 102–103. Habeas relief is unwarranted.

The state court rejected this claim for ineffective assistance of counsel. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

B.    <u>Failure to present co-defendant's confession</u>

C.    <u>Failure to present investigator's testimony</u>

These two claims are interrelated and will be considered together. Petitioner argues that trial counsel was ineffective in failing to present evidence that his co-defendant made an audio-taped confession to an investigator and an assistant district attorney stating that petitioner was not involved. Petitioner also contends that counsel should have called the investigator to testify that petitioner did not possess the PCP bottle. Specifically, petitioner argues that his investigator and an assistant district attorney were aware of Kandilyn Lathon's audio-taped confession stating that a co-defendant was the only person who passed the bottle to another co-defendant, and that the investigator should have testified that petitioner never possessed the PCP bottle.

In his affidavit submitted to the trial court on collateral review, trial counsel Allen C. Isbell testified, in relevant part, as follows:

> I interviewed Kandilyn Lathon, a co-defendant who was charged, also, with possession of the Phencyclidine in the bottle. She had disposed of her case when I interviewed her. She was [petitioner's] girlfriend. [Petitioner] kept insisting that Lathon would testify for him, and exonerate him. I asked Lathon if she would testify for [petitioner]. She refused. Earlier, I had examined

10

Lathon's plea papers which she signed on June 30, 2011.  Her plea papers contained the sworn stipulation that she committed the offense of possession of Phencyclidine "along with Demetrius Williams."  She told me that she told the truth in her plea papers.

*Ex parte Williams*, p. 57.

The state court record also reflects the following *Brady* disclosure by the State:

On 11/09/2012 ADA Ana Martinez met with co-defendant Kandilyn Lathon in the holding cell of the 179th District Court.  Ms. Lathon told ADA Martinez that, on the day of the offense, it was a "dude" the person who gave her the bottle of PCP.  Ms. Lathon stated she did not really know this person.  Ms. Lathon remembered his name to be something like "Chester" or "Chester Bixe."  Ms. Lathon further stated that Defendant Williams was on the other side of the car and not close to her side like the officer stated on his report when she received the PCP.  Ms. Lathon further stated that if she were asked, under oath, whether Defendant Williams gave her the PCP bottle she would "take the 5th."

*Id.*, p. 144.  The *Brady* disclosure does not indicate the date it was signed or filed.  Some of Lathon's second-hand statements above differ from statements she made under oath in open court during her guilty plea hearing.  At her guilty plea hearing, Lathon testified that she and petitioner had possessed the PCP bottle.  Nevertheless, Lathon apparently told the prosecutor that she would "take the 5th" if directly asked whether petitioner handed her the bottle of PCP.

According to the *Brady* disclosure, the prosecutor's conversation with Lathon in the holding cell took place on November 9, 2012, three days prior to trial.  The record shows that defense counsel was made aware of the conversation on the evening of November 12, 2012.

11

2 RR 90. The next morning, on November 13, 2012, Kandilyn Lathon testified in open court outside the presence of the jury, as follows:

BY MR. ISBELL:

Q.    Ms. Lathon, you and I have talked over the phone over the month and in person have we not?

A.    Yes, sir, over the phone.

Q.    And I talked to you in person and we talked about whether you would be willing to testify for Mr. Demetrius Williams and is that what our conversation would you say was about?

A.    Yes, sir.

Q.    And I have furnished to you sometime ago through my investigator a copy of your plea papers in which you said that you committed the offense of possession of Phencyclidine weighing more than 4 grams and less than 200 grams by aggregate that you committed that offense along with Demetrius Williams. I showed you that. You signed that and swore to that, right?

A.    Yes, sir.

Q.    We are in trial with Mr. Demetrius Williams. He has asked me to call you as a witness. You told me yesterday you wanted to take the Fifth Amendment, and we just need to know?

A.    Yes, sir.

THE COURT:    This is Mr. Haze, who is the ad litem attorney for Ms. Lathon.

MR. HAZE:    And after having a conversation with her, she has decided that she would still wishes to invoke the Fifth Amendment and not to testify.

12

THE COURT:        Do you need to ask and have her invoke it or?

MR. ISBELL:       Well, I guess I – she ask to invoke. First, tell me your name.

THE WITNESS:     Kandilyn Lathon.

THE COURT:        Just any question will do at this time.

MR. ISBELL:       Were you arrested on June 3rd, 2011?

THE WITNESS:     Yes, sir.

THE COURT:        I'm going to just – we don't know right now, so do you have any suggestions?

MR. ISBELL:       I think her counsel needs to talk to her about how far she can weigh out of this before she loses that right.

MR. HAZE:  Well, and maybe I should object to any further questions about anything to do with the case because she has said, in other words, that she invokes the right to remain silent and not just the Fifth Amendment word.

THE COURT:        Do you understand that, ma'am?

THE WITNESS:     Yes, sir.

THE COURT:        That you have the right to remain silent and not give evidence against yourself. And if you begin to open that door, the door will open and I may be compelled to make you answer. So if you begin to answer, either you invoke your right or you don't invoke your right. Do you invoke your right to testify against yourself?

MR. HAZE:  To not testify. Is that what you are doing?

THE WITNESS:     I am not testifying. I am pleading the Fifth.

THE COURT:        And that's all we need at this time.  Thank you, ma'am.

THE WITNESS:      Thank you, sir.

3 RR 20–23.

In denying habeas relief, the trial court made the following relevant findings of fact:

8.   The applicant's conclusory allegations that trial counsel withheld statements and documents do not warrant habeas relief.

9.   The applicant fails to establish that trial counsel was ineffective for withholding statements and documents.

10.   The applicant fails to establish ineffective assistance of counsel for failing to cross-examine witnesses because the applicant fails to show what, if anything, could have been accomplished by further cross-examination.

11.   The applicant fails to establish ineffective assistance of counsel for the alleged failure to suppress evidence including the officers' statements because the applicant fails allege specific evidence or statements trial counsel should have objected to and also fails to show that the trial judge would have committed error in overruling the objection.

12.   The applicant fails to establish ineffective assistance of counsel for failing to call Kandilyn Lathon as a witness during trial because he fails to show that Lathon was available, or that her testimony would have benefited the defense.

13.   The applicant fails to establish ineffective assistance of counsel for failing to call John Greenfield because he fails to show that Greenfield was available, or that his testimony would have benefited the defense.

*Ex parte Williams*, pp. 84–85.  The trial court also made the following relevant conclusions of law:

14

16.    In all things, the applicant fails to show that trial counsel was
       ineffective.

17.    In all things, the applicant fails to show that his conviction and sentence
       were improperly obtained.

*Id.*, pp. 87–88 (citations omitted).  The Texas Court of Criminal Appeals relied on these

findings of fact and conclusions of law in denying habeas relief.  *Id.*, at cover.

A trial counsel's determination of which witnesses to call at trial is strategic.

*Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  "A conscious and informed

decision on trial tactics and strategy cannot be the basis for constitutionally ineffective

assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious

unfairness."  *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003).  Further, a challenge

to a failure to call a witness requires proof that the witness would have testified and that the

testimony would have been favorable to the defense. *Alexander,* 775 F.2d at 602.  In light of

Lathon's invocation of her Fifth Amendment rights, the trial court properly ruled that she

could not be compelled to testify.  *See Bridge v. State*, 726 S.W.2d 558, 567 (Tex. Crim.

App. 1986) (holding that a potential defense witness's Fifth Amendment privilege against

self-incrimination overrides a defendant's right to compel testimony). Even though Lathon

had pled guilty to committing the offense with petitioner, she properly invoked her Fifth

Amendment privilege against self-incrimination, as contradictions in previous judicial

admissions could subject her to perjury charges. *See Delrio v. State*, 866 S.W.2d 304, 306

(Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). This outcome is consistent with federal law. *See Brown v. Cain*, 104 F.3d 744, 749 (5th Cir. 1997).

The state court rejected this claim for ineffective assistance of counsel. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

D.  Failure to test PCP bottle for fingerprints

Petitioner claims that trial counsel was ineffective in failing to have the PCP bottle tested for his fingerprints. Petitioner opines that, had counsel tested the bottle, he would have been exonerated.

In responding to petitioner's claim, trial counsel submitted the following affidavit testimony on state collateral review:

> I did not request the bottle containing Phencyclidine be examined for fingerprints for these reasons:
>
> I had strong reasons to believe that [petitioner] had handled the brown bottle containing Phencyclidine. Therefore, it was highly possible that an expert could find his fingerprints on the bottle. This belief that [petitioner] had handled the brown bottle containing Phencyclidine was based, in part, on my interviews of [petitioner's] two co-defendants after each had disposed of his or her case.
>
> I interviewed Girard Castor, a co-defendant arrested out of the same incident. This interview occurred after Castor had pled his case. He asked me and my private investigator "if we wanted to know the truth?" We said, "Yes." Then, Castor told us what happened the night the three suspects were arrested.

16

He said that he (Castor) was driving the Jeep that night. He and [petitioner] were going to buy some PCP (Phencyclidine) to sell. Castor knew a dealer. They drove there. He and [petitioner] went to buy the drug. Castor tested to make sure it was PCP. That is why Castor was smoking the cigarette which he had dipped in PCP. Castor handed the brown bottle of PCP back to [petitioner], who carried it when Castor and [petitioner] returned to their Jeep. When he and [petitioner] saw the police, Castor told me that [petitioner] reached across the seat and gave Kandilyn Lathon the brown bottle. He said that Lathon put the brown bottle in the cargo area.

I interviewed Kandilyn Lathon, a co-defendant who was charged, also, with possession of the Phencyclidine in the bottle. She had disposed of her case when I interviewed her. She was [petitioner's] girlfriend. [Petitioner] kept insisting that Lathon would testify for him, and exonerate him. I asked Lathon if she would testify for [petitioner]. She refused. Earlier, I had examined Lathon's plea papers which she signed on June 30, 2011. Her plea papers contained the sworn stipulation that she committed the offense of possession of Phencyclidine "along with Demetrius Williams." She told me that she told the truth in her plea papers.

Further, the police officer noted that after he placed the three suspects in the back seat of the patrol car, he overheard [petitioner] ask Kandilyn Lathon, "What did you do with that shit?" When I told this to [petitioner], he did not deny saying it. He wanted me to discover whether the police had placed a device in their patrol vehicle that picked up the defendants' conversation. I followed up on this request. There was no evidence that such a device was in the patrol car.

Having discovered the above information, I believed it was very unwise to our defense strategy to risk [petitioner's] fingerprint being found on that bottle. If [petitioner's] prints were not on the bottle, likely, the prosecutor would have the fingerprint expert explain that, more often than not, they do not find usable fingerprints on objects. I have found this to be the approach taken by the prosecutor when an accused's fingerprints are not recovered from an object. On the other hand, if the expert discovered [petitioner's] prints on the bottle, we had no viable defense strategy.

The only viable defense strategy was to cast reasonable doubt on what Officer Holloway claimed he saw that night. Officer Holloway claimed that he saw

17

[petitioner] hand Lathon a brown bottle. Holloway said that he saw Lathon reach over the back seat of their vehicle (a Jeep), and place the brown bottle in the rear cargo area of the Jeep. Officer Crawford, who was with Officer Holloway, went directly into the rear cargo of the Jeep and retrieved the brown bottle.

At trial, the strategy was to cast reasonable doubt that Officer Holloway could have seen the hand to hand transaction between [petitioner] and Lathon, as he claimed. The incident occurred at 11:00 p.m. It was dark, with little illumination in the street where the police observed the defendants and their Jeep. The defense strategy was that Officer Holloway could not have seen [petitioner] handing a brown bottle to Lathon, considering the lighting and circumstances that would have affected the alleged observation. This defense strategy could be viable if the fingerprint expert did not lift [petitioner's] prints from the brown bottle. However, this defense strategy could not be viable if [petitioner's] prints were on the bottle. Based on my investigation showing that [petitioner] participated in purchasing the Phencyclidine for sale; that he handled the bottle during the sale; that he carried the bottle back to the Jeep; that [his] girlfriend, Kandilyn Lathon, pleaded guilty to the same offense, stipulating that she committed the offense along with [petitioner]; and that Lathon refused to testify for [petitioner] after her case was disposed of, I believed the risk of an expert finding [petitioner's] prints on the bottle was too great. We would have no viable defense strategy at trial. Therefore, I did not request that the brown bottle be tested for fingerprints.

*Ex parte Williams*, pp. 57–60.

In rejecting petitioner's claim for ineffective assistance, the trial court made the following relevant findings of fact:

24.  The Court finds the affidavit of Allen C. Isbell is credible and the facts asserted therein are true.

25.  The Court finds, based on the affidavit of Allen C. Isbell, he had reason to believe that an expert might find the applicant's fingerprints on the bottle of evidence containing phencyclidine.

18

26.  The Court finds, based on the affidavit of Allen C. Isbell, that co-defendant Girard Castor told him that the applicant had handled the bottle of phencyclidine.

27.  The Court finds, based on the affidavit of Allen C. Isbell, that co-defendant Kandilyn Lathon signed a stipulation of evidence that she committed the offense along with the applicant.

*Id.*, p. 86 (record citation omitted).   The trial court also made the following relevant conclusions of law:

14.  Trial counsel's decision to not request a fingerprint examination of the bottle of evidence was based on trial strategy.

15.  The applicant fails to show that trial counsel was ineffective for not requesting the bottle of evidence be fingerprinted.

16.  In all things, the applicant fails to show that trial counsel was ineffective.

*Id.*, p. 88 (case citation omitted).   The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief.  *Id.*, at cover.

Under *Strickland*, judicial scrutiny of counsel's performance must be highly deferential.  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.  With regard to the second prong of the *Strickland* test, a "mere possibility" that a different result might have occurred is not sufficient to demonstrate prejudice.  *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).  Here, petitioner presents no probative summary judgment evidence demonstrating that his fingerprints would not have been found on the bottle, nor does he

19

rebut the strong presumption that counsel's decision was reasonable trial strategy. Petitioner shows neither deficient performance nor actual prejudice.

The state court rejected this claim for ineffective assistance of counsel. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

E.    Failure to challenge officers' statements

Petitioner complains that trial counsel failed to challenge the officer's statements from the police report as being prepared by an officer without personal knowledge of the incident. In support, he references two instances in the record indicating that the officers who testified did not write the police report. 2 RR 42, 73. However, petitioner fails to show that such an objection would have been granted, and his argument warrants no relief.

The Texas Rules of Evidence require a witness to have "evidence sufficient to support a finding that the witness has personal knowledge of the matter." TEX. R. EVID. 602. It also provides that when a writing is used by a witness to refresh his memory, "the opposing party is entitled to inspect it, cross-examine the witness on it, and introduce it into evidence." TEX. R. EVID. 612. Both officers whose testimony petitioner challenges were present and had personal knowledge of the facts, and the reports were reviewed, but not admitted. Petitioner does not establish that, had counsel objected, the trial court would have erred in denying the

objection. *See Clark v. Thayer*, 673 F.3d 410, 429 (5th Cir. 2002). Petitioner establishes neither deficient performance nor actual prejudice under *Strickland*.

The state court rejected this claim for ineffective assistance of counsel. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## V. DENIAL OF SUBSTITUTE COUNSEL

Petitioner next claims that the trial court denied him the effective assistance of counsel by refusing to hear and rule on his motion to dismiss counsel prior to trial. Petitioner also claims that the trial court erred in denying his motion for new counsel the morning of trial because he was entitled to substitute counsel.

The record reflects that, on the morning of the first day of trial, out of the presence of the jury but in the presence of petitioner, the following exchange took place:

THE COURT:     The jury is out and Mr. Isbell, the defense attorney, has something to put on the record.

MR. ISBELL:    [Petitioner] wants me removed. [Petitioner] wants me removed as his counsel. He is unhappy with me. In the course of my representation, he has filed two grievances against me, which is all said. There is nothing for me to respond to. He is still unhappy and he wants me to tell you he is unhappy and he wants another lawyer.

THE COURT:     Well, let me tell you how I will respond to that. I have the highest regard for your attorney. Mr. Allen Isbell is one of our finest attorneys down here. There [are] only 25, 30 lawyers out

of 10,000 in this county that [are] qualified to do what he does. He takes capital murder cases. He is one of the few lawyers that is only capital murder case [*sic*]. So if you've committed a capital murder, and they wanted, State wants to take it like [*sic*], we have a very small pool of lawyers that can take those cases. He is one of those [] qualified to do it. He is one of the finest lawyers I know. I have great confidence in him. You need to get along with your lawyer. And if you don't, this is who you have as your lawyer. And we are in trial. And so the jury is waiting to come in. The jury has been selected and they are waiting to come in. So there are very few lawyers that can do what he does and I mean that in the most complimentary way. I use him in this court because he is the one of the best we have.

If you can't get along with him, then I think it must be something with you. I know him. I have known him for more than 20 years down here. And he is one of our finest lawyers. I will not appoint another one. So. All right. I am going to put on my frock.

2 RR 6–7. Petitioner complained in his state habeas proceeding that the trial court's refusal

to order new counsel violated his constitutional rights. In denying petitioner's arguments,

the trial court made the following relevant findings of fact on collateral review:

3.    The Court finds, based on a review of the court record, that trial counsel was appointed on June 6, 2011.

4.    The Court finds, based on a review of the court record, the applicant filed a *pro se* motion to dismiss court appointed trial counsel on August 26, 2011.

5.    The Court finds, based on a review of the court record, the case was originally set for trial on May 11, 2012 and was reset to September 7, 2012 at the State's request.

6.    The Court finds, based on a review of the court record, the case was called to trial and a jury was selected on November 11, 2012.

7.      The Court finds, based on a review of the court record, that trial counsel filed seven (7) pretrial motions.

8.      The Court finds, based on a review of the appellate record, after jury selection, trial counsel informed the trial court, on the record, that the applicant wanted new trial counsel.

9.      The Court finds, based on a review of the appellate record, after a brief exchange on trial counsel's qualifications, the case proceeded to trial.

* * * *

20.     The applicant did not challenge the trial court's denial of his motion to dismiss appointed trial counsel on direct appeal.

*Ex parte Williams*, pp. 84–85 (record citations omitted). The trial court also made the following relevant conclusions of law:

1.      An application for writ of habeas corpus may not be used to litigate matters that could have been raised at trial and on direct appeal.

2.      An accused's right to represent himself or select his own counsel cannot be "manipulated so as to obstruct the orderly procedure in the courts."

3.      An accused may not wait until the day of trial to demand different counsel or to request that counsel be dismissed so that he may retain other counsel.

4.      *The applicant's challenge to the trial court's denial of his motion to dismiss appointed trial counsel was an issue that could have been argued on appeal, therefore it need not be addressed in the instant writ proceeding.*

5.      In the alternative, the trial court had no obligation to find an attorney agreeable to the applicant.

      6.     In the alternative, the applicant's delay in requesting new appointed trial counsel would significantly obstruct the orderly procedure in the trial court.

*Id.*, pp. 86–87 (case citations omitted, emphasis added).   The Texas Court of Criminal

Appeals relied on these findings of fact and conclusions of law in denying habeas relief.  *Id.*,

at cover.

    Where, as here, "a state court finds that a federal claim is procedurally barred, but

goes on to reach the merits of that claim in the alternative, the state court's reliance on the

procedural default still constitutes an independent and adequate state ground which bars

federal habeas review." *Sawyers v. Collins*, 986 F.2d 1493, 1499 (5th Cir. 1993).  The Fifth

Circuit has held that a claim is procedurally defaulted if the state habeas court explicitly

found that the claim could have, but was not, raised on direct appeal, unless one of the

exceptions has been met.  *Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006).

Petitioner did not raise on direct appeal his claims challenging the trial court's actions and/or

inactions regarding trial counsel, and his failure to raise the issues on appeal constitutes a

procedural default under state law.  *Ren v. Scott*, 28 F.3d 431 (5th Cir. 1994); *Ellis v.

Lynaugh*, 883 F.2d 363, 367 (5th Cir. 1989).

    When a state court denies a prisoner's claims based on an independent and adequate

state procedural rule, federal habeas review of the claim is barred unless the prisoner can

demonstrate (1) cause for the default and prejudice as a result of the alleged violation of

federal law, or (2) a resulting fundamental miscarriage of justice; that is, that he was actually

innocent of the crime. *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991); *Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008). A habeas petitioner who seeks to surmount a procedural default through a showing of actual innocence must support his allegations with new, reliable evidence that was not presented at trial and must show that, more likely than not, in light of the new evidence, no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See House v. Bell*, 547 U.S. 518, 537 (2006). This Court has rejected petitioner's federal habeas claims, and petitioner fails to demonstrate cause for the default or prejudice under *Coleman*. Moreover, petitioner fails to demonstrate a resulting fundamental miscarriage of justice, as he does not demonstrate actual innocence under *Bell*. Petitioner's claim is procedurally defaulted and barred from consideration by the Court.

The Constitution guarantees an accused the right to have the assistance of counsel for his defense in all criminal prosecutions. *Wheat v. United States*, 486 U.S. 153, 158 (1988). That right does not include a guarantee of the right to counsel of defendant's choice. *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). Absent a complete denial of counsel, with no meaningful adversarial testing, the *Strickland* standard requires proof of deficiency as well as a reasonable likelihood of a change in the result. *U.S. v. Cronic*, 466 U.S. 648, 659–660 (1984).

Petitioner argues that trial counsel's representation met the *Cronic* requirements, as counsel provided no meaningful adversarial testing of the State's case against him. The Court disagrees. The record as a whole clearly reflects counsel's meaningful adversarial

testing of the State's case, and petitioner's disagreement with counsel's decisions and trial strategy is insufficient to support a *Cronic* claim. Similarly, petitioner's disagreement with counsel's decisions and strategy does not give rise to a conflict of interest requiring new counsel. To the extent petitioner has presented these underlying disagreements to the state and federal court in the form of claims for ineffective assistance of counsel, his claims have been uniformly and properly rejected. Habeas relief is unwarranted.

The state court rejected petitioner's claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## VI.   AMENDED PETITION CLAIMS

On August 7, 2015, petitioner filed an affidavit and a self-styled amended habeas petition. (Docket Entry No. 8.) In the amended petition, petitioner raised the following three additional claims:

1.   Trial counsel undermined petitioner's defense by failing to investigate and present to the jury co-defendant's exculpatory statement that "Chester" passed her the PCP bottle and that petitioner was not standing close to her side of the car, contrary to the police statement.

2.   Petitioner was denied the effective assistance of counsel when the trial court refused to substitute counsel, did not inquire into the alleged conflict, and forced petitioner to go to trial with counsel he did not trust and had not spoken with for months.

3.   Petitioner is legally and factually innocent of the offense because of insufficient drug evidence and ineffective counsel.

Petitioner did not seek leave to file the amended petition, and the Court struck the petition a week after it was filed. Petitioner did not subsequently request leave to file the amended petition. Instead, on November 12, 2015, after the motion for summary judgment and petitioner's response were filed, petitioner re-filed the same amended petition, adding a memorandum in support. (Docket Entry No. 18.) Petitioner again did not seek leave to file the amended petition. Moreover, petitioner did not include a certificate of service showing service of the pleadings on counsel for respondent. The re-filed amended petition and the memorandum in support (Docket Entry No. 18) are **ORDERED STRICKEN** from the record as untimely, unauthorized, and non-compliant.

In the interest of justice, the Court has considered the three claims raised in the amended petition. The Court has not, however, given consideration to petitioner's self-serving affidavit filed with the amended petition, because it was not presented to the state court and does not constitute part of the state court's determination or record. *See Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).

Petitioner's first and second additional claims are little more than permutations of claims already rejected by this Court, and do not warrant habeas relief. Petitioner's third additional claim, on the other hand, is a wholly new claim asserting actual innocence. However, free-standing assertions of actual innocence do not raise cognizable federal habeas

27

claims. *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993); *Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014) (noting that actual innocence is not an independently cognizable federal habeas claim). Habeas relief is unwarranted under this third claim.

## VII.  CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 13) is **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**.  The amended petition and memorandum in support (Docket Entry No. 18) are **STRICKEN FROM THE RECORD**. Any and all pending motions are **DENIED AS MOOT**.  A certificate of appealability is **DENIED**.

**SIGNED** at Houston, Texas on the 16 day of August, 2016.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE